**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
         pkim@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOPHARAT SUMETHASORN, Individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>ASANKO GOLD INC., PETER BREESE, GREGORY MCCUNN, and FAUSTO DI TRAPANI,<br><br>  Defendants. | Case No. 17-cv-3280<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Nopharat Sumethasorn ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Asanko Gold Inc. ("Asanko" or the "Company"), analysts' reports and advisories about the Company, and

1

information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of Asanko from October 24, 2014 through May 31, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the misleading statements entered into and the subsequent damages took place within this judicial district.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant Asanko engages in the exploration, development, and production of gold properties. Its principal project is the Asanko Gold Mine located in the Amansie West District of the Republic of Ghana, West Africa. The Company is incorporated in British Columbia, Canada and its principal executive offices are located at 700-1199 West Hastings Street Vancouver, British Columbia, Canada, V6E 3T5 The Company's securities are traded on NYSE MKT ("NYSE") under the ticker symbol "AKG."

8. Defendant Peter Breese ("Breese") has been the Company's Chief Executive Officer ("CEO") at all relevant times.

9. Defendant Gregory McCunn ("McCunn") was the Company's Chief Financial Officer ("CFO") from April 4, 2011 until his abrupt resignation on January 11, 2017.

10. Defendant Fausto Di Trapani ("Di Trapani") has been the Company's CFO since January 11, 2017.

11. Defendants Breese, McCunn, and Di Trapani are sometimes referred to herein as the "Individual Defendants."

12. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d)  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)  approved or ratified these statements in violation of the federal securities laws.

13.  The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.  The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

15.  The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16.  The Asanko Gold Mine comprises two deposits, Nkran (currently in production) and Esaase, a number of satellite deposits (Abore, Asuadai, Akwasiso, Dynamite Hill, Nkran Extension, Adubiaso and Adubiaso Extension) and a 3Mtpa carbon-in-leach (CIL) processing plant facility.

### Materially False and Misleading Statements

17.  On October 24, 2014, the Company issued a technical report on the Asanko Gold Mine (the "2014 Technical Report"). The 2014 Technical Report was included as an exhibit to a

4

Form 6-K filed with the SEC on October 29, 2014, which Defendant McCunn signed. The 2014 Technical Report stated the following regarding its mineral resource estimates ("MRE"):

**Mineral Resources**

The AGM Mineral Resources are divided between the Obotan Project (Nkran, Adubiaso, Abore, Dynamite Hill & Asuadai deposits) for which a 0.8 g/t cut-off was used, and the Esaase Project (Esaase deposit) for which a 0.6 g/t cut-off was used. The Esaase deposit was estimated in September 2012 by the authours of this report, formerly Minxcon Pty Ltd.

**Asanko Gold Mine Mineral Resources as at April 2014**

| DEPOSIT | MEASURED | | | INDICATED | | | TOTAL (M&I) | | | INFERRED | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tonnage Mt | Grade g/t | Content Moz | Tonnage Mt | Grade g/t | Content Moz | Tonnage Mt | Grade g/t | Content Moz | Tonnage Mt | Grade g/t | Content Moz |
| NKRAN | 13.24 | 2.55 | 1.09 | 25.80 | 2.23 | 1.85 | 39.04 | 2.34 | 2.94 | 7.06 | 2.34 | 0.53 |
| ADUBIASO | 0.73 | 2.60 | 0.06 | 1.40 | 2.04 | 0.09 | 2.13 | 2.23 | 0.15 | 0.20 | 2.27 | 0.02 |
| ABORE | 1.61 | 1.70 | 0.09 | 3.37 | 1.63 | 0.18 | 4.98 | 1.65 | 0.27 | 6.59 | 1.65 | 0.35 |
| DYNAMITE HILL | 0.00 | 0.00 | 0.00 | 1.84 | 1.86 | 0.11 | 1.84 | 1.86 | 0.11 | 0.52 | 1.51 | 0.03 |
| ASUADAI | 0.00 | 0.00 | 0.00 | 1.64 | 1.34 | 0.07 | 1.64 | 1.34 | 0.07 | 1.25 | 1.61 | 0.06 |
| ESAASE | 23.38 | 1.49 | 1.12 | 71.25 | 1.44 | 3.28 | 94.63 | 1.45 | 4.40 | 33.59 | 1.40 | 1.51 |
| TOTAL | 38.96 | 1.88 | 2.36 | 105.30 | 1.65 | 5.58 | 144.26 | 1.71 | 7.94 | 49.21 | 1.58 | 2.50 |

Notes:
1) The cut-off grade used for Phase 1, the Obotan Project resources (Nkran, Adubiaso, Abore, Dynamite Hill & Asuadai) was 0.8 g/t
2) The cut-off grade used for Phase 2, the Esaase Project (Esaase) resource was 0.6 g/t
3) Columns may not add up due to rounding
4) All figures are in metric tonnes
5) The Mineral Resources are stated as in situ tonnes
6) Individual Densities was used per mineral zone
7) The tonnages and contents are stated as 100%, which means no attributable portions have been stated in the table
8) Conversion from gr to oz - 31.10348

18. The 2014 Technical Report stated the following regarding Dynamite Hill:

*Dynamite Hill:*

- The litho-structural model has been developed with an understanding that an indicator approach will be required to capture the continuity of the high-grade mineralisation 3D litho-structural model for the Dynamite Hill Deposit.

- The model captures the current understanding on the geology, structure and controls of mineralisation, providing a framework for the development of indicator domains and resource estimation.

- The modelling approach honours fault kinematics, drill hole geological information, lithology geometry and structural data. Building of the three-dimensional lithological models significantly reduces modelling times from more traditional methods and allows the capture of complex geological/structural relationships not previously possible.

5

- Development of the Dynamite Hill model has also drawn on the geological information gained through the development of the litho-structural models for the Nkran, Adubiaso, Asuadai and Abore deposits. The Dynamite Hill model captures a detailed understanding of the geometry and controls of mineralisation required for the development of a robust resource estimate.

- The geological model supports the distribution and controls of the mineralisation.

- The Adubiaso Gold Project Mineral Resources satisfy the requirements for Measured, Indicated and Inferred Mineral Resource categories as embodied in the NI 43-101 Canadian National Instrument for the reporting of Mineral Resources and Reserves.

- The Mineral Resource estimation indicates reasonable prospects for economic extraction.

19. The statements referenced in ¶¶ 17-18 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's Mineral Resource Estimates are flawed; (2) some of the Company's resources models exhibit signs that they have been "smeared," which would cause estimates of their ore contents to be inflated; and (3) as a result, the Company's public statements were materially false and misleading at all relevant times.

20. On June 30, 2016, hedge fund K2 & Associates Investment Management Inc. published a report on the Company asserting, among other things that the Company's gold resources "don't add up" and appear to be over-inflated by a factor of two.

21. On this news, shares of the Company fell $0.15 per share or over 3% from its previous closing price to close at $3.81 per share on June 30, 2016, damaging investors.

22. On February 24, 2017, the Company issued a press release updating its resources and reserve statement. The February 24th press release was included as an exhibit to a Form 6-K filed with the SEC on February 29, 2017, which Defendant Di Trapani signed. The February 24th press release stated the following regarding the Company's MRE:

**Asanko Gold Updated Resource and Reserve Statement**

VANCOUVER, BRITISH COLUMBIA--(Marketwired - Feb. 24, 2017) -

Highlights:
- Measured and Indicated Resources of 7.34 million ounces at 1.44 g/t Au and Inferred Resources of 1.43 million ounces at 1.43 g/t Au, as at December 31, 2016
- Mineral Resource Estimate includes updated constraining parameters, in line with best practice
- Proven and Probable Mineral Reserves of 4.82 million ounces at 1.57 g/t Au, post Nkran mining depletion of 270,471 ounces, representing no material change to the global reserve inventory.
- Increased exploration program in highly prospective belt expected to add additional ounces in 2017

**Asanko Gold Inc. ("Asanko" or the "Company") (TSX:AKG)(NYSE MKT:AKG)** today publishes updated Mineral Resource and Reserve Estimates, as at 31 December 2016, for the Asanko Gold Mine ("AGM"), located in Ghana, West Africa, as part of its annual filings. A technical presentation is also available on the Asanko website at: www.asanko.com.

The updated Mineral Resource and Reserve Estimates reflect depletion from the first two years of mining, the application of updated constraining parameters for resource modelling, and includes the three deposits discovered in 2016; Akwasiso, Nkran Extension and Adubiaso Extension, two additional pits at Esaase, as well as an updated Mineral Resource Estimate for the Nkran pit, which has been prepared by a second independent expert CSA Global ("CSA"), a leading mineral consulting group.

*****

**Mineral Resource Estimate**

The MRE has been updated as at December 31, 2016 following two years of mining operations at the Nkran pit, infill drilling at the Dynamite Hill deposit, and the discovery and evaluation of the Akwasiso, Adubiaso Extension and Nkran Extension deposits.

7

In line with best practice, the AGM MRE has also been updated from previous Mineral Resources (using a 0.3 g/t Au waste determination and a 0.8 g/t Au cut-off) to Mineral Resources above a cut-off grade of 0.5 g/t Au within a US$2,000 per ounce gold pit shell. The resultant resource estimate is fully compliant with the intent of the CIM 2014 Code (Canada) with respect to stating mineral resources that have a reasonable prospect of eventual economic extraction.

With regards to Nkran, the reserve has been depleted by 270,471 ounces during 2015 and 2016 due to mining operations through to the end of December 2016. In addition, the application of the constraining parameters has resulted in a further 352,000 ounce reduction when compared to the original unconstrained November 2014 DPP MRE. The MRE includes the grade control drilling data on a 10m x 5m grid below the December 31, 2016 pit floor.

Analysis was conducted using uniform conditioning, indicated kriging and ordinary kriging to align the mineral resource estimate methodology to reflect the reconciliation of production during 2016. The sensitivity of the indicated kriging method for ore zone delineation was analyzed in detail and the method confirmed to be appropriate for the Nkran style of mineralization.

During Q4 2016, additional infill drilling was completed at Dynamite Hill, which increased the resource estimate from 110,000 ounces to 180,000 ounces.

The Phase 1 drilling program at the Akwasiso deposit has provided the basis for an initial MRE. The Company is currently completing a second phase of drilling (4,800 metres) which aims to upgrade the considerable inferred resource at this pit to an Indicated classification. The results are expected in H2 2017.
There have been other incremental increases in the satellite pits due to an adjustment of Whittle input parameters such as an improved fuel price, mining and processing costs, process plant throughput and gold recovery rates.

**Table 1: Asanko Gold Mine Global Mineral Resource Estimate (as at December 31, 2016)**

| Deposit | Measured | | | Indicated | | | Total (M&I) | | |
|---|---|---|---|---|---|---|---|---|---|
| | Mt | g/t Au | Moz | Mt | g/t Au | Moz | Mt | g/t Au | Moz |
| Esaase Main | 26.64 | 1.37 | 1.17 | 65.50 | 1.37 | 2.89 | 92.14 | 1.37 | 4.06 |
| Nkran | 5.58 | 1.67 | 0.30 | 34.71 | 1.68 | 1.87 | 40.29 | 1.68 | 2.17 |
| Abore | 2.30 | 1.39 | 0.10 | 4.68 | 1.33 | 0.20 | 6.98 | 1.35 | 0.30 |
| Dynamite Hill | - | - | - | 3.80 | 1.45 | 0.18 | 3.80 | 1.45 | 0.18 |
| Akwasiso | - | - | - | 4.61 | 1.20 | 0.18 | 4.61 | 1.20 | 0.18 |
| Adubiaso | 0.83 | 2.35 | 0.06 | 1.57 | 1.89 | 0.10 | 2.40 | 2.05 | 0.16 |
| Esaase D | 0.97 | 1.09 | 0.03 | 1.35 | 1.39 | 0.06 | 2.33 | 1.26 | 0.09 |
| Esaase B | 0.87 | 0.99 | 0.03 | 2.21 | 0.76 | 0.05 | 3.08 | 0.82 | 0.08 |
| Asuadai | - | - | - | 1.97 | 1.21 | 0.08 | 1.97 | 1.21 | 0.08 |
| Adubiaso Ext. | 0.16 | 1.94 | 0.01 | 0.31 | 1.59 | 0.02 | 0.47 | 1.71 | 0.03 |
| Nkran Ext. | - | - | - | 0.20 | 2.61 | 0.02 | 0.20 | 2.61 | 0.02 |
| Total | 37.36 | 1.42 | 1.71 | 120.91 | 1.45 | 5.63 | 158.27 | 1.44 | 7.34 |

Notes:
All pits are at a cut-off of 0.5g/t Au within a US$2,000 per ounce of gold pit shell.

Nkran includes depletion of 5.08Mt at 1.66 g/t Au for 270,471 ounces.

All figures are rounded to reflect appropriate levels of confidence. Apparent differences may occur due to rounding.

CSA Global undertook the MRE for Nkran and Dynamite Hill and reviewed the Esaase Main pit.

CJM undertook and completed updates to the MRE on Abore, Asuadai, Esaase B and D zones, Akwasiso, Adubiaso, Adubiaso Extension and Nkran Extension.

**Table 2: Asanko Gold Mine Global Mineral Resource Estimate (as at December 31, 2016)**

| Deposit | Inferred | | |
|---|---|---|---|
| | Mt | g/t Au | Moz |
| Esaase Main | 0.95 | 1.37 | 0.04 |
| Nkran | 1.69 | 1.77 | 0.10 |
| Abore | 5.37 | 1.44 | 0.25 |
| Dynamite Hill | 1.19 | 1.43 | 0.05 |
| Akwasiso | 3.85 | 1.56 | 0.19 |
| Adubiaso | 0.30 | 1.98 | 0.02 |
| Esaase D | 1.17 | 1.24 | 0.05 |
| Esaase B | 2.46 | 0.84 | 0.07 |
| Asuadai | 0.92 | 1.61 | 0.05 |
| Adubiaso Ext. | 0.24 | 2.55 | 0.02 |
| Nkran Ext. | 0.02 | 1.12 | 0.00 |
| Total | 18.17 | 1.43 | 0.83 |

Notes:

All pits are at a cut-off of 0.5g/t Au within a US$2,000 per ounce of gold pit shell.

Nkran includes mining depletion 5.08Mt at 1.66 g/t Au for 270,471 ounces.

All figures are rounded to reflect appropriate levels of confidence. Apparent differences may occur due to rounding.

CSA Global undertook the MRE for Nkran and Dynamite Hill and reviewed the Esaase Main pit.

CJM undertook and completed updates to the MRE on Abore, Asuadai, Esaase B and D zones, Akwasiso, Adubiaso, Adubiaso Extension and Nkran Extension.

23.     The statements referenced in ¶ 22 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's Mineral Resource Estimates are flawed; (2) some of the Company's resources models exhibit signs that they have been "smeared," which would cause estimates of their ore contents to be inflated; and (3) as a result, the Company's public statements were materially false and misleading at all relevant times.

24. On May 31, 2017, research firm Muddy Waters published a report on Asanko Gold asserting, among other things, that: (1) Asanko Gold made investments based on flawed geology in Nkran, its satellite pits and Esaase that Muddy Waters believes "will never be recovered"; and (2) there are indicia that some of Asanko Gold's resources models have been "smeared", which would cause estimates of their ore contents to be inflated (the "Muddy Waters Report").

25. The Muddy Waters Report stated the following regarding Dynamite Hill:

<u>We are skeptical about the potential of Dynamite Hill</u>

AKG seems to have soured on developing Dynamite Hill. There are strong indications that prior models for the deposit were "smeared". Until very recently, Dynamite Hill had been scheduled to be the next satellite deposit scheduled for mining. On May 23, 2017, AKG abruptly announced that it will now be mined sometime in 2018. After reviewing an expert evaluation of AKG's geologist reports, we suspect AKG sent this pit to the back of the line because it now believes the economics of mining it are less attractive than previously thought.[46]

We believe that the most recent (February 2017) MRE contains flaws similar in scope and form to those of earlier Nkran estimates. There are indications the models have been smeared, which means to overweight positive results – extrapolating them out broadly – but underweight or ignore "zero intercepts." In the latest February 2017 MRE, CSA's new estimate for Dynamite Hill presented an 86% increase in its ounces (130,000 oz.).[47] As no technical report was released with the latest MRE, we reviewed data provided in the original 2014 MRE for Dynamite Hill.[48]

This was carried out by CJM in 2014 and the DDP was based on this data. We believe this original estimate for Dynamite Hill likely contains data from the original MRE, which stated that:

> "development of the Dynamite Hill model [drew] on the geological information gained through the development of the litho-structural models for the Nkran, Adubiaso, Asuadai and Abore deposits."[49]

Cross-section views of the Dynamite Hill block model generated by CJM MRE show high-grading blocks penetrated by drill holes whose gold interception data points were below the cut-off grade and at zero.[50] The image on the left is from the DPP and shows a section of Dynamite Hill depicting the limits of the indicated resources, the drill holes, and the values of the ore grades intercepted in

the holes as the drilling penetrated the ore body. The image on the right is the section of Dynamite Hill and overlays the 3D block model on top of the drill holes and intercepts. The three ballooned sections provide a close-up view. [51]

 

The three ballooned sections are populated with large amounts of green, orange and pink, indicating that substantial amounts of ore at well above the cut-off grade should be present in these areas. <u>These blocks are intersected by drill holes that contain continuous intercepts with long sections of "null values." This presents a simple contradiction. The drill data indicates there is no ore in the location with the null values, but the model indicates there is a continuous body of above cut-off grade ore in and all around the same place.</u> The model appears to have been smeared: Set up to over-weight positive results - extrapolating them out broadly – but under-weight or ignore "zero intercepts."
(Emphasis in original).

26. The Muddy Waters Report stated the following regarding the Company's MRE:

**Flawed MRE Analyses are at the Root of AKG's Problems**

The root of the problem for the company has been, and remains, overly optimistic Mineral Resource Estimates (MREs).[75] A December 2016 MRE decreased the estimated gold contained in Nkran and Esaase by $581 million. While this MRE seems to bring expectations more in line with reality, we have reason to believe the new Nkran estimate is still flawed. Reported Q1 2017 grades at Nkran fell 11% short of the stated reserve grades in the new MRE, and Q2 2017 is projected to be similar into mid-June.[76] Nkran's measured resources have shrunk dramatically (-22.6%), while growth of indicated and inferred make up some of the difference. The cutoff grades for Nkran and Esaase were lowered dramatically, which also raises eyebrows.

Alarmingly, the same MRE increased the value of satellite deposits using a highly questionable assumed gold price of $2,000/Oz., which is way out of line with AKG's peers. AKG has not yet released a technical report that would shed light on the reasonableness of the upgrades to the satellite pits – investors should demand AKG do so immediately.

27. On this news, shares of the Company fell $0.58 per share or over 31% to $1.29 per share during intraday trading on May 25, 2017 and were halted, damaging investors.

28. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publically traded securities of Asanko during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

30. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

35. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the NYSE, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

36. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

37. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State*

*of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

42. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

43. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

44. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

45. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

46. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

47. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

48. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

50. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

51. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

52. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

53. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class pre judgment and post-jud judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 31, 2017                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
         lrosen@rosenlegal.com

Counsel for Plaintiff